UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No.: 13-30996 (AMN) |
|     DEBRA ANN FERRARO | : | Chapter 7 |
|     *Debtor* | : | |
| | : | |
| RONALD I. CHORCHES, | : | |
| CHAPTER 7 TRUSTEE, | : | |
|     *Movant* | : | |
| v. | : | |
| DEBRA ANN FERRARO, | : | |
|     *Respondent* | : | Re: ECF No. 433, 445, 508, 513, |
| | : | 514, 515 |

**MEMORANDUM OF DECISION AND ORDER APPROVING SETTLEMENT**

Before the court is Ronald I. Chorches, chapter 7 trustee's (the "Trustee"), motion seeking an order authorizing a settlement pursuant to Fed.R.Bankr.P. 9019 (the "9019 Motion") between the bankruptcy estate of debtor Debra Ann Ferraro ("Debtor" or "Debra") and Mary Ferraro. ECF No. 433. The Debtor is the daughter of Mary Ferraro and objects to the 9019 Motion. For the reasons that follow, the court approves the proposed settlement.

**I.    Background**

The present dispute appears to be merely the latest in a series of disputes between the Debtor, Debra Ferraro and her mother, Mary Ferraro. On May 30, 2013, Debra commenced this bankruptcy proceeding with the filing of a voluntary chapter 13 bankruptcy petition and, shortly thereafter, bankruptcy schedules. ECF Nos. 1; 16. Debra's schedules stated the following regarding Mary Ferraro: Schedule B identified a possible claim against Mary Ferraro in the amount of $300,000.00 as an asset (noting

1

that collectability was "doubtful"); Schedule D listed Mary Ferraro with a disputed secured claim against all real property owned by Debra in Connecticut; Schedule F listed Mary Ferraro with a disputed unsecured claim referencing a tort claim pending in the Superior Court of Connecticut, docket number NNH-CV-13-6038963-S. ECF No. 16, pp 5; 9; 14.

On September 25, 2013, Mary Ferraro filed a proof of claim, POC 10-1 ("POC 10-1"), asserting a secured claim of $2,007,658.20 based upon a series of judgment liens recorded against all of Debra's Connecticut real estate.[1]  The liens secure a judgment obtained by the City of New Haven on October 15, 2002, in the amount of $1,023,010.55. In October of 2009, the City of New Haven assigned to Mary Ferraro all of its rights, title, and interest in the judgment liens.

On December 5, 2013, the bankruptcy court, upon Debra's request, converted the case to one under chapter 11. ECF No. 49.  On March 25, 2014, the Office of the U.S. Trustee moved for conversion of the case to chapter 7. ECF No. 88.  On April 23, 2014, the bankruptcy court granted the motion, converted the case to one under chapter 7, and appointed the Trustee.  ECF No. 120.

On December 1, 2014, the Trustee filed an objection to POC 10-1, asserting that, at the time Mary Ferraro obtained the judgment liens, no debt was due or the debt was substantially less than claimed. ECF No. 206.  On the same day, the Trustee commenced an adversary proceeding against Mary Ferraro, Case No. 14-03039, disputing the validity,

---

[1] Specifically, the real estate known as: 703 Forest Road, Northford, Connecticut, 229 Forest Road, North Branford, Connecticut, 294-296 Tyler Street, East Haven, Connecticut, 146 Pisgah Road, Durham, Connecticut, and 540 Clintonville Road, North Haven, Connecticut (the "Properties").

2

priority, and extent of Mary Ferraro's liens. Mary Ferraro contested the allegations of the adversary complaint. AP-ECF No. 8.[2]

After more than a year of litigation and what both the Trustee and Mary Ferraro describe as lengthy negotiations, the Trustee and Mary Ferraro proposed the compromise that is the subject of the instant 9019 Motion. The material terms of the settlement include: that the Trustee shall market the Properties for sale (except for 703 North Forest Road, Northford, Connecticut), that the bankruptcy estate and Mary Ferraro shall split on an equal basis the net proceeds of any sale of any of the Properties, that Mary Ferraro's claim shall be divided into an allowed secured claim of $1,000,000.00 and an allowed unsecured, non-priority claim of $1,007,658.20,[3] and that Mary Ferraro's unsecured claim shall be subordinate to all other unsecured creditors as to the amounts paid pursuant to the net proceeds. ECF No. 433.

In support of proposition that the settlement was in the best interests of the estate, the Trustee proffered that:

- after investigation and review of the documentation provided by Debra, the Trustee did not believe it was likely that the judgment liens could be invalidated;
- even if the Trustee were successful in the adversary proceeding, there may not be a meaningful dividend to creditors;
- in the event the Trustee only avoided a portion of the lien, the remaining portion would be large enough to encumber all the equity in the Properties;
- the Trustee was unable to find case law contrary to Mary Ferraro's position that she is the owner of validly perfected judgment liens; and

---

[2] References to documents filed in adversary proceeding case number 14-03039 are in the following format: AP-ECF No. ___. References to documents filed in the underlying bankruptcy case, case number 13-30996, are in the following format: ECF No. ___.

[3] The settlement proposes that Mary Ferraro would be allowed a secured claim of $1,000,000 and an unsecured, non-priority claim of $1,854,836.19. During the hearing on January 11, 2017, counsel for Mary Ferraro represented that she would waive any claim in excess of the amount set forth in POC 10-1. ECF No. 516 at 00:11:09-00:11:20; ECF No. 516 at 00:13:40 – 00:14:46. The effect of the waiver is that Mary Ferraro will have an allowed secured claim of $1,000,000 and an allowed, unsecured, non-priority claim in the amount of $1,007,658.20.

- the inherent risks and costs of continued litigation weighed in favor of a settlement that guaranteed a dividend to creditors.

ECF No. 433.

On March 24, 2016, Debra, *pro se*, filed an objection to the 9019 Motion claiming that Mary Ferraro's judgment liens were invalid and improper as the City of New Haven had filed a satisfaction of judgment before the assignment of the judgment liens. ECF No. 445. Debra also claimed that the litigation was straightforward and any trial would only take a day. ECF No. 445, p. 1. On December 7, 2016, Debra, through counsel, filed a memorandum of law in support of her objection. ECF No. 508. In her memorandum, Debra asserted that she had standing to object as she would be directly and adversely affected pecuniarily by an order approving the settlement. Debra claimed she had standing because, if the Trustee successfully avoided Mary Ferraro's lien and if the Trustee sold the Properties, the net proceeds would be used to reduce the Connecticut Department of Revenue's ("DRS") unsecured, and non-dischargeable, priority claim of $233,755.51, POC 4-2. Debra contended that this reduction of the DRS's claim, that would have the effect of reducing her post-bankruptcy liability, represented a pecuniary benefit sufficient to confer standing. As to the merits of the settlement, Debra again asserted that the liens were invalid by virtue of the satisfaction of judgment. She also claimed that the court should disapprove the settlement because it proposed a claim in favor of Mary Ferraro in an amount greater than the amount set forth in POC 10-1.[4]

During the hearing on December 14, 2016, the court heard oral argument and requested supplemental briefs limited to the issue of Debra's standing. On January 6,

---

[4] As noted, this issue was resolved during the hearing by the waiver described in footnote 3, above.

4

2017, the parties filed simultaneous briefs. ECF Nos. 513, 514, and 515. The court held a further hearing on January 11, 2017, at which time it took the matter under advisement.

## II. Discussion

### A. Debtor's Standing.

Section 1109(b) provides that, "[a] party in interest, including the debtor, the trustee, a creditors' committee, … may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109. "[A] 'party in interest' is not defined in the [Bankruptcy] Code; when interpreting the meaning of that phrase we are governed by the Code's purposes." *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983). "Whether a party qualifies as a 'party in interest' is determined on a case-by-case basis, taking into consideration whether that party has a 'sufficient stake' in the outcome of that proceeding, which can include having a pecuniary interest directly affected by the bankruptcy proceeding." *Church Mut. Ins. Co. v. Am. Home Assur. Co. (In re Heating Oil Partners, LP)*, 422 F. App'x 15, 17 (2d Cir. 2011).

"[T]he general rule is that a debtor lacks standing to object to a claim because bankruptcy proceedings absolve the debtor of any liability to creditors and the debtor has no interest in the distribution of the estate's property since the property has passed to the trustee." *Licata v. Coan*, Docket No. 3:14-cv-1754 (MPS), 2015 U.S. Dist. LEXIS 160333, at *15, 2015 WL 9699304, at *5 (D.Conn. Sep. 22, 2015). The Second Circuit has provided an exception to the general rule and has held that a chapter 7 debtor is a "party in interest" and has standing to object to a sale of the assets – or an order approving a settlement of disputed claims – "only if there could be a surplus after all creditors' claims are paid." *Licata v. Coan (In re Licata)*, 659 F. App'x 704, 706 (2d Cir. 2016)(citing *In re*

5

*60 East 80th St. Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000). To establish standing, the chapter 7 debtor has the burden of showing that there is at least a reasonable possibility of a surplus. See, *Id.* at 115-16.

Here, Debra did not assert, nor present evidence, that there is a reasonable possibility of a surplus. The Trustee, during the hearing held on December 14, 2016, estimated that he expected to net approximately $156,558.56 in sale proceeds, so that if POC 10-1 was disallowed in its entirety, the entire amount be distributed to pay approximately $325,000.00 to $350,000.00 in administrative, priority, and general unsecured claims. ECF No. 509 at 00:11:10 – 00:13:00.[5]

Instead of arguing that she might benefit from a surplus, Debra asked the court to create a further exception and find that where an order of the court may have the effect of causing a reduction in a debtor's post-bankruptcy liability on a non-dischargeable debt, the debtor has standing. In support of her proposition, Debra cited to *Willard v. O'Neil (In re Willard)*, 240 B.R. 664 (Bankr. D. Conn. 1999)(Krechevsky, J.), where the court recognized a debtor may have standing to object to a claim where the claim involved may not be discharged. Here, unlike the situation in *Willard,* the Debtor essentially concedes the DRS claim is non-dischargeable and there will be no surplus. No complaints under § 523 or § 727 were filed and, on January 14, 2015, Debra received a discharge. ECF No. 247. The Debtor now asks the court to confer standing so that she can attack the Trustee's litigation strategy related to POC 10-1 and Mary Ferraro's liens, as well as the administration of the case. The debtor asks the court to substitute her judgment for that of the Trustee. The court declines to do so.

---

[5] All timestamps indicate the hours minutes and seconds (00:00:00) for the .mp3 file publicly available at the referenced ECF No. as played on VLC Media Player.

6

The possibility that, if the settlement is disapproved, Debra will benefit from a greater reduction in the DRS claim is indirect and speculative as it assumes the Trustee could either negotiate a better settlement deal or win enough after trial to offset litigation costs (which the Trustee apparently believes is a 50-50 proposition). Accordingly, the court concludes the Debtor here, under the circumstances presented in this case, does not have a direct pecuniary interest in the settlement sufficient to confer standing.

### B.     Trustee's 9019 Motion.

A bankruptcy court may approve a settlement pursuant to Fed.R.Bankr.P 9019(a) if it is fair, equitable, and in the best interests of the estate. *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012). The decision whether to accept or reject a settlement lies within the court's sound discretion. *In re Soup Kitchen Int'l Inc.*, 506 B.R. 29, 37 (Bankr. E.D.N.Y. 2014). "In undertaking an examination of the settlement, … th[e] responsibility of the bankruptcy judge, … is not to decide the numerous questions of law and fact raised … but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." *Nuevo Pueblo, LLC v. Napolitano (Nuevo Pueblo, LLC),* 608 F. App'x 40, 42 (2d Cir. 2015)(citing, *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir. 1983)). The Second Circuit outlined the test for consideration of a settlement under the Bankruptcy Rules in *Motorola, Inc. v. Official Comm. of Unsecured Creditors* (*In re Iridium Operating LLC)*, 478 F.3d 452 (2007). Under the *Iridium* test, the court is required to evaluate several factors, including:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits;
>
> (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment;

7

(3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement;"

(4) whether other parties in interest support the settlement;

(5) the competency and experience of counsel supporting, and [t]he experience and knowledge of the bankruptcy court judge reviewing, the settlement;

(6) the nature and breadth of releases to be obtained by officers and directors; and

(7) the extent to which the settlement is the product of arm's length bargaining. *Id.* at 462.
*See also, In re Motors Liquidation Co.*, 555 B.R. 355, 367 (Bankr. S.D.N.Y. 2016).

A bankruptcy court is not required to conduct a "mini trial" when approving a settlement under Bankruptcy Rule 9019; rather, the court "need only 'canvass the issues' to determine if the 'settlement falls below the lowest point in the range of reasonableness.'" *In re Fletcher Int'l, Ltd.*, No. 12-12796 (REG), 2016 WL 900385, at *3 (S.D.N.Y. Feb. 26, 2016) (*quoting In re Teltronics Serv., Inc.*, 762 F.2d 185, 189 (2d Cir.1985)). "In that vein and of note, one district court in this circuit held that a bankruptcy court is not required to take evidence when deciding whether to approve a settlement." *In re Friedberg*, 502 B.R. 8, 16 (Bankr. D. Conn. 2013), subsequently *aff'd sub nom. Friedberg v. Neier*, 619 F. App'x 14 (2d Cir. 2015), and subsequently *aff'd,* 634 F. App'x 333 (2d Cir. 2016). "Rather, the court is required to make an informed and independent judgment regarding the appropriateness of the settlement after independently examining the identified *Iridium* factors." *Id.* at 16.

Here the Debtor is the only party who objected to the Trustee's 9019 Motion. While the court finds the Debtor does not have standing to object to the proposed settlement, it

nonetheless considered her objection assuming that she may have standing and overrules the objection. Having reviewed the relevant parts of the record and considered the arguments of counsel and the memoranda they filed, the court concludes that the proposed compromise is in the best interests of the creditors of the estate and does not "fall below the lowest point in the range of reasonableness." *In re Teltronics Serv., Inc.*, 762 F.2d 185 (2d Cir. 1985). In light of the history of this matter, the court affords weight to the Trustee's representations that this settlement was the result of lengthy arms-length negotiations. The court also credits the Trustee's assertion that the documents provided by the debtor do not support her contention that the judgment liens would be or can be invalidated and that there is case law favorable to Mary Ferraro's position.

The court notes that approval of the settlement guarantees a dividend to the creditors of the estate. Further, under the terms of the settlement, Mary Ferraro's unsecured claim is subordinate to all other unsecured creditors. In the absence of approval of the settlement, there is no guarantee of success on the merits of the adversary proceeding in whole or in part. There is also no guarantee that the Trustee could negotiate a better deal with more time. However, continued litigation in the adversary will guarantee increased administrative costs to be borne by Debra's estate at the expense of other creditors. For these reasons, the settlement satisfies the first, second, third, and seventh factors of the *Iridium* test, and the court affords the most weight to these factors under these circumstances.

Debra, in opposing the 9019 Motion also raised the issue that the settlement proposes to give Mary Ferraro a secured claim of $1,000,000.00 and an unsecured claim

9

of $1,754,836.19, totaling $2,754,836.19.  As discussed at footnote 3, above, this issue was addressed and resolved during the hearing on January 11, 2017.

### IV.    Conclusion

The 9019 Motion is approved and the Trustee is authorized to compromise and settle the claims as proposed therein, with the modification that Mary Ferraro shall have an allowed, secured claim in the amount of $1,000,000 and an allowed, unsecured claim in the amount of $1,007,658.20.

Dated on March 3, 2017, at New Haven, Connecticut.



Ann M. Nevins
United States Bankruptcy Judge
District of Connecticut